UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WORLD GYM, INC. and<br>PATRICKO, INC., | )<br>)<br>) |  |
| Plaintiffs | )<br>)<br>) |  |
| v. | )<br>)<br>) | Civil Action No. 12-11620-DJC |
| PLA-FIT FRANCHISE, LLC and<br>TWIN OAKS SOFTWARE DEVELOPMENT<br>INC., | )<br>)<br>)<br>) |  |
| Defendants. | )<br>) |  |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                             July 19, 2013

### I.     Introduction

Plaintiffs Word Gym, Inc. ("World Gym") and Patricko, Inc. ("Patricko") (collectively, the "Plaintiffs") have brought this action against Defendants Pla-Fit Franchise, LLC ("PFF") and Twin Oaks Software Development ("Twin Oaks") (collectively, the "Defendants") asserting common law and statutory claims in connection with Franchise Agreements for Planet Fitness centers. PFF moved to dismiss and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., on the ground that the dispute is covered by arbitration clauses in the Franchise Agreements. Twin Oaks also moved to dismiss and compel arbitration or, in the alternative, stay the litigation pending arbitration or dismiss for improper venue. The Court GRANTS the Defendants' motions to dismiss and compel arbitration.

## II.     Factual Allegations

Unless otherwise noted, the following facts are from the Plaintiffs' complaint.

### A.     Franchise Negotiations

Patrick H. Catino and Kevin Lavelle own and operate World Gym, a franchise fitness center in Somerville, Massachusetts. Compl. ¶ 1. Catino also owns and operates Patricko, a franchise fitness center in Tewksbury, Massachusetts. Id. ¶ 2. PFF franchises Planet Fitness centers throughout the country. Id. ¶ 3. On or about June 1, 2006, the Plaintiffs met with PFF Founder and President, Michael Grondahl, to discuss purchasing and operating a Planet Fitness branch franchise. Id. ¶ 8. At that meeting, Grondahl presented the Plaintiffs with a Franchise Agreement. Id. ¶ 9. On June 7, 2006, the Plaintiffs resumed discussions with Grondahl who assured them that if they transitioned into Planet Fitness Centers, PFF would not restrict the Plaintiffs' ability to continue to offer their members the APEX personal training program. Id. ¶¶ 10-11. The Plaintiffs inquired about PFF's intentions to place additional franchises within areas from where the Plaintiffs anticipated drawing members and Grondahl indicated that PFF did not offer exclusive jurisdictional agreements and would not encroach upon an existing Planet Fitness location. Id. ¶ 13. In reliance upon Grondahl's representations, the Plaintiffs each entered into a Franchise Agreement with PFF. Id. ¶ 15; Ex. A, PFF's Mem., D. 11; Ex. B, PFF's Mem., D. 12.

Each Franchise Agreement contains a "Negotiation and Arbitration" provision (the "Arbitration Clause") that provides:

> All controversies, disputes, or claims between the parties, including their respective affiliates, owners, officers, directors, agents, and employees arising from or relating to this [Franchise] Agreement that are not resolved by negotiations within thirty (30) days of the notice of dispute, shall on demand of either party be submitted for arbitration to the American Arbitration Association

("AAA").  The arbitration shall be governed exclusively by the United States Arbitration Act (9 U.S.C. § 1, et seq.), without reference to any state arbitration statutes.

D. 11 § 19.12; D. 12 § 19.12.

### B. Alleged Misrepresentations Regarding APEX and Exclusive Territories

Shortly after executing the Franchise Agreements on July 7, 2006, PFF began to voice its displeasure at the Plaintiffs' APEX personal training program.  Compl. ¶ 16.  On January 29, 2008, Grondahl sent an email addressed to all Planet Fitness franchisees mocking Lavelle for his maintenance of the APEX personal training program.  Id. ¶ 17.  On March 10, 2008, the Plaintiffs each received a letter from PFF ordering the removal of the APEX personal training program and restricting fitness training offers in strict compliance with PFF authorized products and providers.  Id. ¶ 18.  On December 1, 2010, PFF barred all personal training at all Planet Fitness centers.  Id. ¶ 20.

Between April 2007 and September 2011, PFF granted several franchise licenses to independent franchisees to open Planet Fitness locations within two to six miles of the Plaintiffs' locations in Somerville and Tewksbury.  Id. ¶¶ 21–24, 26–28.  In response to the Plaintiffs' inquiries regarding the nearby competing Planet Fitness locations, PFF informed the Plaintiffs that it had executed an Area Development Agreement ("ADA") with an independent franchisee granting that franchisee exclusive territory rights within the territory in which World Gym drew a significant portion of its members.  Id. ¶ 25.  PFF permitted franchises that were opened pursuant to an ADA initially to offer more aggressive and dramatic price reductions than other franchises.  Id. ¶ 30.

### C.     Alleged Misrepresentations Regarding the Contested Funds

Twin Oaks is a software company that entered into a contract with each Plaintiff to process the Plaintiffs' monthly client membership fees and maintain the funds in a designated bank account. Compl. ¶¶ 5–6. The Franchise Agreements provide that the Plaintiffs must "establish a designated bank account from which [PFF] or [PFF's] authorized designee shall be authorized to withdraw in any manner which [PFF] provide[s], which may include wire transfer, any amounts due to [PFF] . . . from you . . . including Royalty Fees due." D. 11 § 5.4; D. 12 § 5.4. The Plaintiffs authorized PFF as a designee capable of withdrawing amounts due only for Royalty Fees. Compl. ¶ 6.

On May 16, 2012, PFF sent an email to the Plaintiffs indicating that each owed overdue receivables and informing them that it would immediately withdraw the funds from a designated account. Id. ¶ 34. Prior to sending this notice to the Plaintiffs, PFF directed Twin Oaks to transfer $30,515.67 from a World Gym account and $9,967 from a Patricko account (collectively, the "Contested Funds"). Id. ¶ 35. The Plaintiffs immediately challenged the liability and transfer and notified Twin Oaks that it was not authorized to transfer the Contested Funds to PFF. Id. ¶ 36. Twin Oaks told the Plaintiffs that PFF had already withdrawn the Contested Funds pursuant to its authority to withdraw Royalty Fees. Id.

On May 21, 2012, PFF told the Plaintiffs that it captured the Contested Funds as part of the Plaintiffs' contribution towards a National Advertising Fund ("NAF") pursuant to sections 11.1–11.4 of the Franchise Agreements. Id. ¶ 37. On May 31, 2012, the Plaintiffs mailed a demand letter to PFF pursuant to Mass. Gen. L. c. 93A demanding it prove the source of the alleged liability or return the Contested Funds. Id. ¶ 39. On June 6, 2012, PFF again told the

Plaintiffs that the Contested Funds were withdrawn to satisfy the Plaintiffs' contribution to a NAF for an advertising campaign that took place between October 2010 and April 2011. Id. ¶ 40. However, on July 5, 2012, PFF told the Plaintiffs that the Contested Funds were withdrawn as overdue receivables for television advertising. Id. The Plaintiffs informed PFF that they had contacted David Laird, PFF's Massachusetts Marketing Representative, in September 2010 to request that they be permitted to opt out of the NAF and Laird consented. Id. ¶ 41. In November 2010, the Plaintiffs were billed for the NAF and they immediately contacted Laird who stated that he would "handle the mistake." Id. ¶ 42. The Plaintiffs allege that Twin Oaks was either misled as to the nature of the Plaintiffs' liability or failed to act consistently with its contractual duties since PFF was not authorized pursuant to the contract between Twin Oaks and each Plaintiff to withdraw or transferred funds to satisfy a NAF liability. Id. ¶ 38.

### III.  Procedural History

On August 30, 2012, the Plaintiffs filed the instant complaint and asserted eighteen claims against PFF and Twin Oaks. D. 1. Both Plaintiffs assert claims for fraud (Counts I, VI, VIII and XIII), negligent misrepresentation (Counts II and IX ), breach of contract (Counts III and X), breach of the covenant of good faith and fair dealing (Counts IV and XI), conversion (Counts V and XII) and violation of Mass. Gen. L. c. 93A (Counts VII and XIV) against PFF. Compl. ¶¶ 43–108. The Plaintiffs also assert claims for breach of contract (Counts XV and XVII) and violation of Mass. Gen. L. c. 93A (Counts XVI and XVIII) against Twin Oaks. Id. ¶¶ 109–26. PFF has now moved to dismiss and compel arbitration pursuant to the FAA. D. 7. Twin Oaks has also moved to dismiss and compel arbitration. D. 14. In the alternative, Twin Oaks requests that this Court stay the litigation pending arbitration between the Plaintiffs and

PFF or dismiss for improper venue. Id. After a hearing on the motions, the Court took the matters under advisement. D. 29.

**IV.     Discussion**

    **A.     Legal Standards Governing Arbitration**

The "FAA compels judicial enforcement of . . . written arbitration agreements." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). Under section 2 of the FAA, a "written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has stated that "the FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1749 (2011), and "[s]ection 2 embodies the national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). "A party who is seeking to compel arbitration must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011)). If the movant has made this showing, section 4 of the FAA "requires courts to compel arbitration 'in accordance with the terms of the agreement.'" AT&T Mobility, 131 S. Ct. at 1748 (quoting 9 U.S.C. § 4). "Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found

arbitrable." Next Step Med. Co., Inc. v. Johnson & Johnson Int'l, 619 F.3d 67, 71 (1st Cir. 2010) (emphasis in original).

### B.    Arbitrability of Plaintiffs' Claims against PFF

PFF seeks to dismiss the Plaintiffs' complaint and compel them to honor their agreement to arbitrate disputes "arising from or relating to" to the Franchise Agreements. The Plaintiffs and PFF agree that they are parties to the Franchise Agreements that contain the Arbitration Clause. See D. 8 at 5, D. 17 at 11, D. 11 at 39, D. 12 at 39. However, the Plaintiffs resist arbitration on the ground that their complaint contains allegations that they were fraudulently induced into signing the Franchise Agreements and thus the agreements as a whole are invalid. D. 17 at 11–12. The Plaintiffs allege that PFF made the following material misrepresentations prior to the execution of the Franchise Agreements: (1) PFF would not restrict the Plaintiffs' ability to maintain the APEX personal training programs and (2) PFF would neither encroach upon existing Planet Fitness locations, nor grant exclusive territory to franchisees. Compl. ¶¶ 11, 13–14. According to the Plaintiffs, they relied upon these misstatements and were induced to enter into the Franchise Agreements. Id. ¶ 15. Although the Plaintiffs concede that their fraud claims are within the scope of the Arbitration Clause, they argue that these claims render the clause invalid and inapplicable here. D. 17 at 13.

The Plaintiffs' argument that the Arbitration Clause is invalid because the Franchise Agreements as a whole were fraudulently induced is unpersuasive. The Supreme Court has rejected a similar argument and explained that section 2 of the FAA requires that "courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the

arbitration clause itself, or claims that the agreement to arbitrate was '[n]ever concluded.'" Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2858 (2010) (alteration in original) (internal citations omitted) (quoting Buckeye, 546 U.S. at 444 n.1); see also Rent-A-Ctr., W., Inc. v. Jackson, 130 S. Ct. 2772, 2779 (2010). Here, the Plaintiffs allege fraud in the inducement of the Franchise Agreements as a whole and the complaint is devoid of any allegations regarding the Arbitration Clause. Therefore, the Arbitration Clause is not invalid and unenforceable on the basis of the Plaintiffs' fraud claims, which must be referred to the arbitrators.[1] See Buckeye, 546 U.S. at 445–46 (noting that "an arbitration provision is severable from the remainder of the

---

[1] At oral argument, Plaintiffs raised for the first time new allegations relating to the Arbitration Clause itself, arguing that the Arbitration Clause should not be enforced because it is unconscionable and requested leave to amend the complaint. Leave to amend pleadings should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), however, "the largesse that Rule 15(a)(2) contemplates is not without limits." Calderón-Serra v. Wilmington Trust Co., 715 F.3d 14, 19 (1st Cir. 2013). "A district court may deny leave to amend when the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" Id. (alteration in original) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)). In this case, the complaint, which was filed on August 30, 2012, makes numerous references to the Franchise Agreements yet never mentions the Arbitration Clause that was plainly contained within these agreements. In addition, when confronted with the motions to dismiss on the grounds of arbitration, the Plaintiffs had an adequate opportunity to raise the unconscionability of the Arbitration Clause in their opposition briefs that were filed in October 30, 2012 and November 6, 2012, but failed to do so. Instead, the Plaintiffs simply argued in their opposition briefs that "they would not have signed the franchise agreement or agreed to arbitrate any subsequent disputes between them and Pla-Fit if Pla-Fit had not truthfully represented their stance o[n] personal training and exclusive territories." D. 19 at 10; see also D. 17 at 13. The only reason Plaintiffs' counsel gave for not making the unconscionability argument sooner is the need for discovery first to uncover facts to support this claim. However, a plaintiff is not entitled to discovery "merely to find out whether or not there may be a factual basis for a claim which she has not made." Kadar Corp. v. Milbury, 549 F.2d 230, 233 n.2 (1st Cir. 1977) (quoting Cohen v. Ill. Inst. of Tech., 524 F.2d 818, 827 (7th Cir. 1975)) (internal quotation mark omitted). Accordingly under these circumstances, the Court denies the oral request for leave to amend. See Calderon-Serra, 2013 WL 1715518, at *5 (noting that "[a]ppreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend"); Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (affirming a denial of a motion to amend to add a new claim and new defendants that was brought four months after the filing of the complaint where the plaintiff offered no justification for the delay); Kay v. N.W. Democratic Party, 821 F.2d 31, 34 (1st Cir. 1987) (affirming a finding of undue delay where almost three months had elapsed).

contract" and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"); see also Rust v. Budget Blinds, Inc., No. 07-40180-FDS, 2007 WL 3332806, at *1 (D. Mass. Oct. 3, 2007) (holding that "[b]ecause plaintiffs have made no claim that defendant's fraud was directed at the agreements' arbitration clauses specifically, the parties should be required to arbitrate whether the contracts in their entirety were induced by fraud").

The Plaintiffs do not dispute that their fraud (Counts I, VI, VIII and XIII), negligent misrepresentation (Counts II and IX), breach of contract (Counts III and X), conversion (Counts V and XII) and 93A (Counts VII and XIV) claims against PFF fall within the scope of the Arbitration Clause. D. 17 at 13–14. However, they assert that their claims for breach of the covenant of good faith and fair dealing (Counts IV and XI) fall outside of the scope of the Arbitration Clause. Id. at 14–15. The Arbitration Clause provides that "[a]ll controversies, disputes, or claims between the parties . . . arising from or relating to this Agreement . . . shall on demand of either party be submitted for arbitration to the American Arbitration Association ("AAA")." D. 11 § 19.12; D. 12 § 19.12. In determining whether the Plaintiffs' claims fall within the scope of the Arbitration Clause, the Court must focus on the factual allegations underlying their claims in the complaint. Dialysis, 638 F.3d at 378. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), and "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." Dialysis, 638 F.3d at 376 (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995)) (internal quotation marks omitted).

Here, the Plaintiffs allege that the Franchise Agreements "incorporate[] an implied covenant of good faith and fair dealing," "PFF has repeatedly abused the on-going business relationship between itself as franchisor and Plaintiff[s] as . . . independent franchisee[s]," and this "abuse constitutes a breach of the covenant of good faith and fair dealing." Compl. ¶¶ 60–61, 93–94. Under Massachusetts and New Hampshire law,[2] the covenant of good faith and fair dealing is implied in every contract and without an underlying contract there can be no claim for breach of the covenant. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005); J & M Lumber & Constr. Co., Inc. v. Smyjunas, 161 N.H. 714, 724 (2011). Because there is no covenant of good faith and fair dealing to be breached without a contract, and the relationship between PFF, as franchisor, and Plaintiffs, as franchisees, is governed by the Franchise Agreements, the Plaintiffs' claims arise from or relate to the Franchise Agreements. Thus, the Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing fall within the scope of the Arbitration Clause.

For the foregoing reasons, the Plaintiffs must arbitrate all of their claims against PFF. World Gym and Patricko must also arbitrate their claims against PFF separately because each Arbitration Clause provides that "arbitration proceedings shall be conducted on an individual basis and not on a multi-plaintiff, consolidated, collective or class-wide basis," D. 11 § 19.12, D. 12 § 19.12, and the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" AT&T Mobility, 131 S. Ct. at 1748 (alteration in original) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior

---

[2] Section 19.13 of the Franchise Agreements contained a choice-of-law provision establishing that "this [Franchise] Agreement, the franchise and all claims arising from the relationship between us and you will be governed by the laws of New Hampshire." D. 11 § 19.13; D. 12 § 19. 13.

Univ., 489 U.S. 468, 478 (1989)); id. at 1749 (noting that parties may agree "to arbitrate according to specific rules" and "to limit with whom they will arbitrate" (emphasis in original)).

### C. Arbitrability of Plaintiffs' Claims against Twin Oaks

Although it is not a signatory to the Franchise Agreements, Twin Oaks seeks to dismiss the Plaintiffs' claims against it and compel arbitration because those claims "are factually and legally inextricably intertwined with those asserted against PFF." D. 15 at 5. Federal courts "have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003) (emphasis in original) (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995)). The Plaintiffs do not dispute that Twin Oaks has a "cognizable argument to join the arbitration in regard to its breach of contract claims." D. 19 at 10. The Plaintiffs' 93A claims against Twin Oaks are also sufficiently intertwined with the Franchise Agreement into which the Plaintiffs entered. The basis for the Plaintiffs' 93A claims against Twin Oaks is that "Twin Oaks breached its contractual duty by permitting PFF to directly withdraw funds from [the Plaintiffs'] account without the necessary authority" and "Twin Oaks knowingly permitted PFF to gain unauthorized access to its account." Compl. ¶¶ 114–15, 123–24. The Franchise Agreements mandated the creation of the accounts at issue, see D. 11 § 5.4, D. 12 § 5.4, and whether it was impermissible for Twin Oaks to transfer the Contested Funds to PFF is dependent upon the authority granted to PFF under the Franchise Agreements to withdraw funds, see Compl. ¶¶ 35–42. Accordingly, the fact that Twin Oaks is not a signatory to the Franchise Agreement is not a sufficient basis to deny arbitration and the Plaintiffs, as a matter of equitable

estoppel, shall not avoid arbitrating their claims against Twin Oaks. See Sourcing Unlimited, Inc. v. Asimco Int'l, Inc., 526 F.3d 38, 47 (1st Cir. 2008) (noting that the "[signatory] plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel [against the plaintiff]" (alterations in original) (quoting In re Humana Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002), rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401 (2003)) (internal quotation mark omitted)).

## V. Conclusion

For the foregoing reasons, the Court GRANTS PFF and Twin Oaks's motions to dismiss the complaint and compel arbitration.[3]

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] Given this ruling, the Court need not address Twin Oaks's alternative arguments that the Court should stay the claims against it pending arbitration between PFF and the Plaintiffs or dismiss the claims against it for improper venue. D. 15 at 7–9.